## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IFC CREDIT CORPORATION, an Illinois corporation | ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| v. | ) ) | Amount Demanded: $1,204,860.67, plus costs, interest and appropriate attorney's fees |
| JOHNSON BROADCASTING, INC., a Michigan corporation, JOHNSON BROADCASTING OF DALLAS, INC., a Texas corporation, DOUGLAS R. JOHNSON, individually, and MELANIE JOHNSON, individually, | ) ) ) ) ) ) ) | FILED: JULY 3, 2008 08CV3822 JUDGE MANNING MAGISTRATE JUDGE COLE |
| Defendants. | ) ) | AEE |

### VERIFIED COMPLAINT

NOW COMES IFC CREDIT CORPORATION by and through one of its attorneys, BETH ANNE ALCANTAR, and for its Complaint against the Defendants, alleges and states as follows:

### FACTS APPLICABLE TO EACH COUNT - THE PARTIES

1.      Plaintiff, IFC Credit Corporation ("IFC") was and now is a corporation incorporated under the laws of the State of Illinois, having its principal place of business at 8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053.

2.      Johnson Broadcasting, Inc. is a Michigan corporation, and has its principal place of business in the State of Michigan.  Defendant, Johnson Broadcasting, Inc., executed relevant documents which are the subject of this lawsuit.

3.     Johnson Broadcasting of Dallas, Inc. is a Texas corporation, and has its principal place of business in the State of Texas.  Defendant, Johnson Broadcasting of Dallas, Inc., executed relevant documents which are the subject of this lawsuit.

4.     Douglas R. Johnson ("Douglas") is the Personal Guarantor, and has his principal place of residence in the State of Texas.

5.     Melanie Johnson ("Melanie") is the Personal Guarantor, and has her principal place of residence in the State of Texas.

## JURISDICTION AND VENUE

6.     This court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds, exclusive of interest and cost, the sum of $75,000.00 and is between citizens of different states.   Venue is proper pursuant to 28 U.S.C. §1391(a)(1). Additionally, a certain Master Lease Agreement No: 801075 (attached hereto as **"Exhibit A"** and incorporated herein), which include schedules Lease Schedules No. 001, 002 and 003, and Guaranties were executed by the Defendants and are the subject matter of this suit. Those documents contain forum selection clauses designating this judicial district as the exclusive jurisdiction and venue for this action.

## COUNT I BREACH OF CONTRACT
## SCHEDULE NO. 001 OF LESSEE JOHNSON BROADCASTING, INC.

7.    As and for Paragraph 7 of its Verified Complaint, IFC restates Paragraphs 1 through 6 as if fully set forth herein.

8.    On or about May 18, 2006, Johnson Broadcasting, Inc., as lessee, entered into the Master Lease Agreement No: 801075 ("MLA"), and Lease Schedule No. 001 (the "Schedule 1") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more

2

particularly described therein (the "Equipment"). A copy of Schedule 1 bearing a description of the Equipment is attached hereto and incorporated herein as **"Exhibit B."**

9.     Johnson Broadcasting, Inc. took delivery of and accepted the Equipment on or about May 18, 2006 (See "Certificate of Acceptance" Section of **"Exhibit C"**).

10.     Schedule 1 obligates Johnson Broadcasting, Inc. to make 2 advanced payments of $8,590.00 and $8,590.00 each month for 58 months there after, inclusive of sales tax where applicable unless Schedule 1 is terminated in accordance with the provisions of paragraph 22 of MLA.

11.     The MLA provides at Paragraph 17 that in the event Johnson Broadcasting, Inc. fails to pay any rental payment as scheduled, the Lessor may declare the entire amount due under Schedule 1 immediately due and payable (the "Accelerated Balance").

12.     Johnson Broadcasting, Inc. has failed and refused to pay rental payments to IFC when due and incurred late charges pursuant to MLA.

13.     Defendants failed to cure said defaults and consequently, pursuant to a Notice of Default and Acceleration, IFC accelerated Schedule 1 payments, which became immediately due and payable. Notices & Demand for Past Payments were sent to Johnson Broadcasting, Inc. True and correct copies of such Notices are attached hereto as **"Exhibit D"**.

14.     IFC is entitled to recover from Johnson Broadcasting, Inc. an amount equal to the Accelerated Balance (which includes the residual value of the Equipment), plus interest in accordance with the terms of MLA, plus reasonable attorneys' fees, costs and expenses IFC may incur in the enforcement of its remedies under MLA.

15.     After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC is not less than $463,030.35, exclusive of attorneys' fees, costs, and other applicable charges accruing pursuant to Schedule 1, as well as interest thereon.

3

16.    The obligation of Johnson Broadcasting, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Johnson Broadcasting, Inc., jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $463,030.35, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)    Awarding IFC its reasonable attorneys' fees, and collection and court costs incurred in enforcing its rights under Schedule 1; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

## COUNT II BREACH OF CONTRACT
## <u>SCHEDULE NO. 002 OF LESSEE JOHNSON BROADCASTING, INC.</u>

17.    As and for Paragraph 17 of its Verified Complaint, IFC restates Paragraphs 1 through 16 as if fully set forth herein.

18.    On or about May 18, 2006, Johnson Broadcasting, Inc., as lessee, entered into the Master Lease Agreement No: 801075 ("MLA"), and Lease Schedule No. 002 (the "Schedule 2") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of Schedule 2 bearing a description of the Equipment is attached hereto and incorporated herein as **"Exhibit E."**

19.    Johnson Broadcasting, Inc. took delivery of and accepted the Equipment on or about May 18, 2006 (See "Certificate of Acceptance" Section of **"Exhibit F"**).

20.    Schedule 2 obligates Johnson Broadcasting, Inc. to make 2 advanced payments of $5,045.00 and $5,045.00 each month for 58 months there after, inclusive of sales tax where

applicable unless Schedule 2 is terminated in accordance with the provisions of paragraph 22 of MLA.

21.    The MLA provides at Paragraph 17 that in the event Johnson Broadcasting, Inc. fails to pay any rental payment as scheduled, the Lessor may declare the entire amount due under Schedule 2 immediately due and payable (the "Accelerated Balance").

22.    Johnson Broadcasting, Inc. has failed and refused to pay rental payments to IFC when due and incurred late charges pursuant to MLA.

23.    Defendants failed to cure said defaults and consequently, pursuant to a Notice of Default and Acceleration, IFC accelerated Schedule 2 payments, which became immediately due and payable.  Notices & Demand for Past Payments were sent to Johnson Broadcasting, Inc.  True and correct copies of such Notices are attached hereto as "**Exhibit D**".

24.    IFC is entitled to recover from Johnson Broadcasting, Inc. an amount equal to the Accelerated Balance (which includes the residual value of the Equipment), plus interest in accordance with the terms of MLA, plus reasonable attorneys' fees, costs and expenses IFC may incur in the enforcement of its remedies under MLA.

25.    After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC is not less than $237,016.70, exclusive of attorneys' fees, costs, and other applicable charges accruing pursuant to Schedule 2, as well as interest thereon.

26.    The obligation of Johnson Broadcasting, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Johnson Broadcasting, Inc., jointly and severally with all other defendants in this action, as follows:

5

a)    Awarding IFC damages in the principal amount of not less than $237,016.70, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)    Awarding IFC its reasonable attorneys' fees, and collection and court costs incurred in enforcing its rights under Schedule 2; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

## COUNT III BREACH OF CONTRACT
## SCHEDULE NO. 003 OF LESSEE JOHNSON BROADCASTING, INC.

27.    As and for Paragraph 27 of its Verified Complaint, IFC restates Paragraphs 1 through 26 as if fully set forth herein.

28.    On or about May 18, 2006, Johnson Broadcasting, Inc., as lessee, entered into the Master Lease Agreement No: 801075 ("MLA"), and Lease Schedule No. 003 (the "Schedule 3") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of Schedule 3 bearing a description of the Equipment is attached hereto and incorporated herein as **"Exhibit G."**

29.    Johnson Broadcasting, Inc. took delivery of and accepted the Equipment on or about May 18, 2006 (See "Certificate of Acceptance" Section of **"Exhibit H"**).

30.    Schedule 3, as subsequently modified, obligates Johnson Broadcasting, Inc. to make 2 advanced payments of $11,136.08 and $11,136.08 each month for 58 months there after, inclusive of sales tax where applicable unless Schedule 3 is terminated in accordance with the provisions of paragraph 22 of MLA.

31.    The MLA provides at Paragraph 17 that in the event Johnson Broadcasting, Inc. fails to pay any rental payment as scheduled, the Lessor may declare the entire amount due under Schedule 3 immediately due and payable (the "Accelerated Balance").

32.    Johnson Broadcasting, Inc. has failed and refused to pay rental payments to IFC when due and incurred late charges pursuant to MLA.

33.    Defendants failed to cure said defaults and consequently, pursuant to a Notice of Default and Acceleration, IFC accelerated Schedule 3 payments, which became immediately due and payable. Notices & Demand for Past Payments were sent to Johnson Broadcasting, Inc. True and correct copies of such Notices are attached hereto as "**Exhibit D**".

34.    IFC is entitled to recover from Johnson Broadcasting, Inc. an amount equal to the Accelerated Balance (which includes the residual value of the Equipment), plus interest in accordance with the terms of MLA, plus reasonable attorneys' fees, costs and expenses IFC may incur in the enforcement of its remedies under MLA.

35.    After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC is not less than $504,813.62, exclusive of attorneys' fees, costs, and other applicable charges accruing pursuant to Schedule 3, as well as interest thereon.

36.    The obligation of Johnson Broadcasting, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Johnson Broadcasting, Inc., jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $504,813.62, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)    Awarding IFC its reasonable attorneys' fees, and collection and court costs incurred in enforcing its rights under Schedule 3; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

## COUNT IV BREACH OF CONTRACT
## SCHEDULE NO. 001 OF LESSEE JOHNSON BROADCASTING OF DALLAS, INC.

37.    As and for Paragraph 37 of its Verified Complaint, IFC restates Paragraphs 1 through 36 as if fully set forth herein.

38.    On or about May 18, 2006, Johnson Broadcasting of Dallas, Inc., as lessee, entered into the Master Lease Agreement No: 801075 ("MLA"), and Lease Schedule No. 001 (the "Schedule 1") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of Schedule 1 bearing a description of the Equipment is attached hereto and incorporated herein as **"Exhibit B."**

39.    Johnson Broadcasting of Dallas, Inc. took delivery of and accepted the Equipment on or about May 18, 2006 (See "Certificate of Acceptance" Section of **"Exhibit C"**).

40.    Schedule 1 obligates Johnson Broadcasting of Dallas, Inc. to make 2 advanced payments of $8,590.00 and $8,590.00 each month for 58 months there after, inclusive of sales tax where applicable unless Schedule 1 is terminated in accordance with the provisions of paragraph 22 of MLA.

41.    The MLA provides at Paragraph 17 that in the event Johnson Broadcasting of Dallas, Inc. fails to pay any rental payment as scheduled, the Lessor may declare the entire amount due under Schedule 1 immediately due and payable (the "Accelerated Balance").

42.    Johnson Broadcasting of Dallas, Inc. has failed and refused to pay rental payments to IFC when due and incurred late charges pursuant to MLA.

43.    Defendants failed to cure said defaults and consequently, pursuant to a Notice of Default and Acceleration, IFC accelerated Schedule 1 payments, which became immediately due and payable. Notices & Demand for Past Payments were sent to Johnson Broadcasting of Dallas, Inc. True and correct copies of such Notices are attached hereto as **"Exhibit D"**.

8

44.     IFC is entitled to recover from Johnson Broadcasting of Dallas, Inc. an amount equal to the Accelerated Balance (which includes the residual value of the Equipment), plus interest in accordance with the terms of MLA, plus reasonable attorneys' fees, costs and expenses IFC may incur in the enforcement of its remedies under MLA.

45.     After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC is not less than $463,030.35, exclusive of attorneys' fees, costs, and other applicable charges accruing pursuant to Schedule 1, as well as interest thereon.

46.     The obligation of Johnson Broadcasting of Dallas, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Johnson Broadcasting of Dallas, Inc., jointly and severally with all other defendants in this action, as follows:

a)     Awarding IFC damages in the principal amount of not less than $463,030.35, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)     Awarding IFC its reasonable attorneys' fees, and collection and court costs incurred in enforcing its rights under Schedule 1; and

c)     Awarding IFC such other and further relief as this Court deems just and reasonable.

## COUNT V BREACH OF CONTRACT
## SCHEDULE NO. 002 OF LESSEE JOHNSON BROADCASTING OF DALLAS, INC.

47.     As and for Paragraph 47 of its Verified Complaint, IFC restates Paragraphs 1 through 46 as if fully set forth herein.

48.     On or about May 18, 2006, Johnson Broadcasting of Dallas, Inc., as lessee, entered into the Master Lease Agreement No: 801075 ("MLA"), and Lease Schedule No. 002 (the "Schedule

2") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of Schedule 2 bearing a description of the Equipment is attached hereto and incorporated herein as **"Exhibit E."**

49.     Johnson Broadcasting of Dallas, Inc. took delivery of and accepted the Equipment on or about May 18, 2006 (See "Certificate of Acceptance" Section of **"Exhibit F"**).

50.     Schedule 2 obligates Johnson Broadcasting of Dallas, Inc. to make 2 advanced payments of $5,045.00 and $5,045.00 each month for 58 months there after, inclusive of sales tax where applicable unless Schedule 2 is terminated in accordance with the provisions of paragraph 22 of MLA.

51.     The MLA provides at Paragraph 17 that in the event Johnson Broadcasting of Dallas, Inc. fails to pay any rental payment as scheduled, the Lessor may declare the entire amount due under Schedule 2 immediately due and payable (the "Accelerated Balance").

52.     Johnson Broadcasting of Dallas, Inc. has failed and refused to pay rental payments to IFC when due and incurred late charges pursuant to MLA.

53.     Defendants failed to cure said defaults and consequently, pursuant to a Notice of Default and Acceleration, IFC accelerated Schedule 2 payments, which became immediately due and payable. Notices & Demand for Past Payments were sent to Johnson Broadcasting of Dallas, Inc. True and correct copies of such Notices are attached hereto as **"Exhibit D"**.

54.     IFC is entitled to recover from Johnson Broadcasting of Dallas, Inc. an amount equal to the Accelerated Balance (which includes the residual value of the Equipment), plus interest in accordance with the terms of MLA, plus reasonable attorneys' fees, costs and expenses IFC may incur in the enforcement of its remedies under MLA.

55.    After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC is not less than $237,016.70, exclusive of attorneys' fees, costs, and other applicable charges accruing pursuant to Schedule 2, as well as interest thereon.

56.    The obligation of Johnson Broadcasting of Dallas, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Johnson Broadcasting of Dallas, Inc., jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $237,016.70, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)    Awarding IFC its reasonable attorneys' fees, and collection and court costs incurred in enforcing its rights under Schedule 2; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

## COUNT VI BREACH OF CONTRACT
## SCHEDULE NO. 003 OF LESSEE JOHNSON BROADCASTING OF DALLAS, INC.

57.    As and for Paragraph 57 of its Verified Complaint, IFC restates Paragraphs 1 through 56 as if fully set forth herein.

58.    On or about May 18, 2006, Johnson Broadcasting of Dallas, Inc., as lessee, entered into the Master Lease Agreement No: 801075 ("MLA"), and Lease Schedule No. 003 (the "Schedule 3") with IFC CREDIT CORPORATION, as lessor, for the lease of certain personal property more particularly described therein (the "Equipment"). A copy of Schedule 3 bearing a description of the Equipment is attached hereto and incorporated herein as **"Exhibit G."**

11

59.    Johnson Broadcasting of Dallas, Inc. took delivery of and accepted the Equipment on or about May 18, 2006 (See "Certificate of Acceptance" Section of **"Exhibit H"**).

60.    Schedule 3, as subsequently modified, obligates Johnson Broadcasting of Dallas, Inc. to make 2 advanced payments of $11,136.08 and $11,136.08 each month for 58 months there after, inclusive of sales tax where applicable unless Schedule 3 is terminated in accordance with the provisions of paragraph 22 of MLA.

61.    The MLA provides at Paragraph 17 that in the event Johnson Broadcasting of Dallas, Inc. fails to pay any rental payment as scheduled, the Lessor may declare the entire amount due under Schedule 3 immediately due and payable (the "Accelerated Balance").

62.    Johnson Broadcasting of Dallas, Inc. has failed and refused to pay rental payments to IFC when due and incurred late charges pursuant to MLA.

63.    Defendants failed to cure said defaults and consequently, pursuant to a Notice of Default and Acceleration, IFC accelerated Schedule 3 payments, which became immediately due and payable. Notices & Demand for Past Payments were sent to Johnson Broadcasting of Dallas, Inc. True and correct copies of such Notices are attached hereto as **"Exhibit D"**.

64.    IFC is entitled to recover from Johnson Broadcasting of Dallas, Inc. an amount equal to the Accelerated Balance (which includes the residual value of the Equipment), plus interest in accordance with the terms of MLA, plus reasonable attorneys' fees, costs and expenses IFC may incur in the enforcement of its remedies under MLA.

65.    After applying all just credits and deductions, as of the date of default, the amount due and owing to IFC is not less than $504,813.62, exclusive of attorneys' fees, costs, and other applicable charges accruing pursuant to Schedule 3, as well as interest thereon.

66.    The obligation of Johnson Broadcasting of Dallas, Inc. to pay to IFC is based on a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Johnson Broadcasting of Dallas, Inc., jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $504,813.62, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)    Awarding IFC its reasonable attorneys' fees, and collection and court costs incurred in enforcing its rights under Schedule 3; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

## COUNT VII
## BREACH OF CONTRACT OF
## PERSONAL GUARANTY BY DOUGLAS R. JOHNSON

67.    As and for Paragraph 67 of its Verified Complaint, IFC restates Paragraphs 1 through 66 as if fully set forth herein.

68.    Defendant Douglas Johnson unconditionally and personally guaranteed the performance of Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. under the Guaranty ("Personal Guaranty"), in writing. A true and correct copy of the signed Personal Guaranty is attached as **"Exhibit I."** Said copy has been redacted to exclude the social security numbers listed thereon.

69.    IFC has demanded that Douglas Johnson satisfy the indebtedness of Johnson Broadcasting, Inc. and Johnson Broadcasting of Dallas, Inc. under MLA, but Douglas Johnson has failed and refused to do so.

70.    From the date of default Douglas Johnson is obligated to IFC for the principal amount due IFC, which as of the date of default is not less than $1,204,860.67, exclusive of reasonable attorneys' fees, costs and other applicable charges accruing pursuant to the MLA and the Personal Guaranty, as well as interest thereon in accordance with the terms of MLA.

71.    The obligation of Douglas Johnson to pay IFC is based upon a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA and the Personal Guaranty, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Douglas R. Johnson, jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $1,204,860.67, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)    Awarding IFC its attorneys' fees, collection and court costs incurred in enforcing its rights under the MLA; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

## COUNT VIII
## BREACH OF CONTRACT OF
## PERSONAL GUARANTY BY MELANIE JOHNSON

72.    As and for Paragraph 72 of its Verified Complaint, IFC restates Paragraphs 1 through 71 as if fully set forth herein.

73.    Defendant Melanie Johnson unconditionally and personally guaranteed the performance of Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. under the Guaranty ("Personal Guaranty"), in writing.  A true and correct copy of the signed Personal Guaranty is attached as **"Exhibit I."** Said copy has been redacted to exclude the social security numbers listed thereon.

14

74.    IFC has demanded that Melanie Johnson satisfy the indebtedness of Johnson Broadcasting, Inc. and Johnson Broadcasting of Dallas, Inc. under MLA, but Melanie Johnson has failed and refused to do so.

75.    From the date of default Melanie Johnson is obligated to IFC for the principal amount due IFC, which as of the date of default is not less than $1,204,860.67, exclusive of reasonable attorneys' fees, costs and other applicable charges accruing pursuant to the MLA and the Personal Guaranty, as well as interest thereon in accordance with the terms of MLA.

76.    The obligation of Melanie Johnson to pay IFC is based upon a written contract. Accordingly, IFC is entitled to recover prejudgment interest at the rate provided by the MLA and the Personal Guaranty, which is 1.5% per month pursuant to paragraph 18 of the MLA.

WHEREFORE, IFC CREDIT CORPORATION respectfully requests that this Court enter judgment in its favor and against defendant Melanie Johnson, jointly and severally with all other defendants in this action, as follows:

a)    Awarding IFC damages in the principal amount of not less than $1,204,860.67, together with pre-judgment interest at 18% from the date of default, which is included in calculation, until such sum is paid in full;

b)    Awarding IFC its attorneys' fees, collection and court costs incurred in enforcing its rights under the MLA; and

c)    Awarding IFC such other and further relief as this Court deems just and reasonable.

Respectfully submitted,

IFC CREDIT CORPORATION

By: /s/ Beth Anne Alcantar
         Attorney for Plaintiff

Beth Anne Alcantar, IARDC No. 06226582
Attorney for Plaintiff,
IFC Credit Corporation
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053
(847) 663-6700

15

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned, David J. Stone, Vice President of Collection of IFC Credit Corporation, certifies that the statements set forth in the foregoing instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes them to be true.

_David J. Stone, Vice President - Collections_

David J. Stone

Beth Anne Alcantar, IARDC No. 06226582
Attorneys for Plaintiff,
IFC Credit Corporation
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053
(847) 663-6700

Johnson Broadcasting, Inc.

**IFC CREDIT CORPORATION**
8700 Waukegan Road, Suite 100
Morton Grove, IL 60053-2104
888-554-IIFC

**MASTER LEASE AGREEMENT NO. 804075**

**CO-LESSEE: Johnson Broadcasting of Dallas, Inc., a Texas Corporation and CO-LESSEE: Johnson Broadcasting, Inc., a Michigan Corporation**

The Co-Lessees are hereinafter collectively referred to as the "Lessee" in this Master Lease Agreement and any other document related or attached hereto.

**County:** Harris County

**Address:** 8440 Westpark Drive

**City, State Zip:** Houston, Texas 77063-5808

**Contact:** Mr. Douglas Johnson

**Phone:** 713-974-5151

[X] Corporation  [ ] Limited Liability Company  [ ] Partnership  [ ] Sole Proprietorship

THIS IS A MASTER LEASE AGREEMENT. THIS AGREEMENT IS COMPRISED OF THE TERMS SET FORTH HEREIN, IN THE VARIOUS SCHEDULES ATTACHED HERETO AND IN ANY CONFIDENTIAL LEASE PROPOSALS EXECUTED FROM TIME TO TIME BY LESSOR AND LESSEE THAT HAVE YET TO BE DOCUMENTED IN A LEASE SCHEDULE AND FUNDED. REFER TO SCHEDULES ATTACHED HERETO FROM TIME TO TIME FOR SPECIFIC EQUIPMENT DESCRIPTIONS AND PAYMENT AMOUNTS SET FORTH THEREIN.

### TERMS AND CONDITIONS

**1. LEASE.** Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor, the personal property set forth on the lease schedule which may from time to time be executed by Lessor and Lessee ("Schedule") upon the terms and conditions set forth in the Master Lease Agreement ("Lease") as supplemented by the terms and conditions which may be set forth in the appropriate Schedule identifying such items of personal property, together with all replacement parts, additions, and accessories incorporated therein and/or affixed thereto, (all collectively referred to hereinafter as "Equipment"). Each Schedule shall incorporate by reference the terms and conditions of this Lease and shall constitute a separate and independent lease of the Equipment. Neither this Lease nor any Schedule hereto may be cancelled or terminated except as expressly provided herein or therein. This Lease is irrevocable by Lessee for the full term of any Schedule and for the aggregate rentals provided therein.

**2. RENTALS.** During and for the original term hereof, Lessee hereby agrees to pay Lessor as and for rental of the Equipment the amounts specified in the Schedule as monthly or other calendar period rental multiplied by the number of months or periods specified in the Schedule. Rental per day for the period from the Lease Commencement Date specified in the Schedule to the Initial Term Start Date shall be equal to 1/30th of the Lease Rental Payment and shall be due in advance of the Initial Term Start Date. The payment due date shall be specified by Lessor or its assign in the Schedule or other supplementary documents to this Agreement. All payments shall be made at the office of the Lessor at 8700 North Waukegan Road, Suite 100, Morton Grove, IL 60053 or as otherwise directed by Lessor in writing. Lease payments not received by the Lessor on or prior to the payment due date shall be delinquent, and shall be subject to late charges specified in Paragraph 18 herein. If Lessor shall at any time accept rent after it shall become due or shall accept less than from the total amount due, such acceptance shall not constitute a release or an accord and satisfaction of any greater sum due, nor shall such acceptance be construed as a waiver of any or all of Lessor's rights hereunder.

**3. EQUIPMENT AND LIABILITY.** Lessor, at the request of Lessee, shall order the Equipment described in the Schedule from a supplier selected by Lessee. Lessor shall not be liable for specific performance of this Lease or damages or in any manner whatsoever, if, for any reason, supplier fails to accept such order or delays or fails to fill the order. Lessee agrees to accept such Equipment and to complete and deliver to Lessor the Certificate of Acceptance provided by Lessor upon acceptance of the Equipment by Lessee. In the event Lessee rightfully rejects any items of Equipment, Lessee shall, within ten (10) days of delivery, notify Lessor and supplier in writing of any defects or other discrepancies with respect to such Equipment. In the event of such rejection by Lessee, Lessee shall on demand by Lessor, pay Lessor any amounts theretofore paid by Lessor in respect of the purchase of such Equipment, and upon such payment, Lessee shall be subrogated to Lessor's claim, if any, against the supplier. If Lessor fails to execute and deliver to Lessor the Certificate of Acceptance or fails to notify Lessor or supplier in writing of any defects in or other discrepancies with respect to the Equipment within ten (10) days of delivery of the Equipment, it shall be an irrefutable presumption, as between Lessor and Lessee, that such Equipment has been unconditionally accepted by Lessee for Lessee hereunder and Lessee's obligations shall be unconditional and shall not be subject to any set-off, defense, deduction, or counterclaim whatsoever.

**4. PLACE OF USE, INSPECTION.** Lessee shall keep the Equipment at the location specified in the Schedule. Lessee covenants and agrees that the Equipment shall be used by employees of the Lessee only, and the Equipment, or any part thereof, shall not be loaned or sublet to others for their own use. Whenever requested by Lessor, Lessee shall promptly advise Lessor of the exact location of the Equipment. Lessee shall not change the location of the Equipment without the express prior written permission of Lessor. Lessor, from time to time, may enter the premises where the Equipment is located and inspect and label same.

**5. ADVANCE RENTALS AND FINANCIAL INFORMATION.** At the Lessor's option, any advance rentals or security deposit paid by Lessee may be applied by Lessor to cure any default of Lessee under this Lease in which event Lessee shall promptly restore the advance rental or security deposit to its full amount as set forth in the Schedule. Each year within ten (10) days after completion and in no event more than sixty (60) days after Lessee's fiscal year end, Lessee shall deliver to Lessor and its assignees true, correct, and complete annual audited consolidated financial statements with an unqualified opinion, and Federal Income Tax Returns including all Schedules if financial statements are unaudited. Lessee will also deliver its quarterly consolidated financial statements (which shall be in a form satisfactory to Lessor and its assignees) within sixty (60) days after the end of each of its fiscal quarters. Lessee shall, and shall cause any guarantor(s) of this Lease to, furnish to Lessor within five (5) days of any request thereof by Lessor any credit or financial information of the Lessee or such guarantor(s) (including, without limitation, their respective most recent financial statements, balance sheets, and income statements) as Lessor shall request from time to time. Lessor is hereby authorized to issue appropriate press releases, include the transaction in Lessor's newsletter, and/or to cause a tombstone to be published announcing the consummation of this transaction and the aggregate amount thereof.

**6. DISCLAIMER OF WARRANTY.** LESSOR IS NOT THE MANUFACTURER OR THE SUPPLIER OF THE EQUIPMENT, AND IS NOT A DEALER IN SIMILAR EQUIPMENT. LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT, EXPRESS OR IMPLIED, WITH RESPECT TO THE DESIGN, CONDITION, DURABILITY, SUITABILITY, FITNESS FOR USE OR PARTICULAR PURPOSE, OR MERCHANTABILITY OF THE EQUIPMENT IN ANY RESPECT. AS BETWEEN LESSOR AND LESSEE, THE EQUIPMENT SHALL BE ACCEPTED AND LEASED BY LESSEE "AS IS", "WHERE IS", AND "WITH ALL FAULTS." LESSEE ACKNOWLEDGES THAT LESSEE HAS SELECTED THE EQUIPMENT OF THE EQUIPMENT AND THAT LESSOR HAS NOT RECOMMENDED SUPPLIER. LESSOR SHALL HAVE NO OBLIGATION TO INSTALL, MAINTAIN, ERECT, TEST, ADJUST, OR SERVICE THE EQUIPMENT. REGARDLESS OF CAUSE, LESSEE AGREES NOT TO ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR FOR ANY LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL LESSOR BE RESPONSIBLE FOR ANY DAMAGES OR COSTS WHICH MAY BE ASSESSED AGAINST LESSEE IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES LETTERS PATENT. LESSOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS LEASE FOR TAX OR ACCOUNTING PURPOSES. Lessee agrees to settle all such claims directly with the supplier, and will not assert any such claims or defenses against Lessor or Lessor's assignee. Lessor assigns to, authorizes, and appoints Lessee to enforce, in its own name and at its own expense, any claim, warranty, agreement or representation which supplier, but Lessor assumes no obligation as to the extent or enforceability thereof. No delay in shipment, defect or unfitness of the Equipment, loss or damage thereto, or any other circumstances shall relieve Lessee of its obligations under this Lease, which obligations are absolute and unconditional. Supplier is not an agent of Lessor and no employee of supplier is authorized to waive, supplement, or otherwise alter any provision of this Lease.

**7. ERRORS IN ESTIMATED COST.** The amount of each rent payment and the advance rental (collectively referred to in this paragraph only as "rent") are based upon the estimated total cost of the equipment (including taxes, transportation, and any other charges). The rent shall be adjusted proportionally if the actual cost of the Equipment differs from estimated cost. Lessee hereby authorizes Lessor to correct the figures set forth in the Schedule when the actual cost is known, and to add or reduce

to the amount of each rent payment and any sales or other tax that may be imposed on the payments. If the actual cost of the Equipment in the aggregate differs from the estimated cost by more than ten percent, Lessor, at its own option, may terminate this Lease by giving written notice to the Lessee within five (5) days after receiving notice of the actual cost.

**8. TITLE; LIENS; TAXES.** The Equipment is, and shall at all times be and remain (i) the sole and exclusive property of Lessor, and the Lessee shall have no right, title, or interest therein or thereto other than as expressly set forth in this Lease, (ii) personal property notwithstanding that the Equipment or any part thereof may now be or hereafter become in any manner affixed, attached to, or embedded in, or permanently resting upon, real property or any building thereon. Lessee agrees to affix nameplates or decals to the Equipment indicating Lessor's ownership when so requested by Lessor. Lessee shall keep the Equipment free and clear of levies, liens, and encumbrances and shall pay all license and registration fees, assessments, filing or recording fees, documentary stamp taxes, fees payable under certificate of title laws with respect to motor vehicles, valuation taxes, personal property taxes, excise taxes including value added taxes, and all other taxes (local, State and Federal) which may now or hereafter be imposed upon the ownership, lease, rental, sale, purchase, possession, or use of the Equipment whether assessed to Lessor or Lessee excluding, however, all taxes on or measured by Lessor's taxable income. If such taxes or fees are levied against the Lessor, or if Lessee fails to make any payment required hereby, the Lessor shall have the right, but not the obligation, to pay such taxes or fees, whether levied against the Lessor or the Lessee. In such event the Lessee shall reimburse the Lessor therefore within five (5) days after the receipt of an invoice and for the failure to make such reimbursement when due the Lessor shall have all remedies provided herein with respect to the nonpayment of rent hereunder. Lessee shall give Lessor immediate notice of any attachment or other judicial process, lien, or encumbrance affecting the Equipment and shall indemnify and save Lessee harmless from any loss or damage caused thereby.

**9. FILING.** Lessee hereby authorizes Lessor to file this Lease, any financing statements and amendments thereto, security agreements, applications or other documents under certificate of title laws with respect to any or all of the Equipment or any collateral pledged by Lessee without the signature of Lessee thereon, and if Lessee's signature is required thereon by law, Lessee appoints Lessor as its attorney-in-fact to execute any such instruments and documents. Lessee shall execute such supplemental instruments, financing statements, and other documents as Lessor deems to be necessary or advisable to carry out the purposes of this Lease and any Schedule hereunder and shall otherwise cooperate to defend the title of the Lessor by filing or otherwise. Lessee, upon demand, shall promptly pay all filing costs and fees incurred in the preparation and filing of such documents. To secure all of Lessee's indebtedness, liabilities and obligations to Lessor under this Lease or otherwise, Lessee hereby grants to Lessor a lien on and security interest in and to the Equipment, together with all substitutions and additions therefore, all parts and components thereof and accessions thereto and the proceeds of all of the foregoing, including proceeds of insurance.

**10. INSURANCE.** Commencing on the date of loss passes to Lessor from the supplier and continuing until Lessee has returned the Equipment to Lessor pursuant to Paragraph 14, Lessee, at its expense, shall keep the Equipment insured against all risks of loss or damage from every cause whatsoever for the greater of the total rent for the term of this Lease or the full un-depreciated replacement value (new) of the Equipment (including software) corresponding to the date of loss or the full replacement value thereof, whichever is higher, plus all taxes, transportation and installation costs. Lessee shall carry public liability insurance, both bodily injury and property damage, insuring the Equipment, which shall be of a type, form, in amounts, with companies and contain terms and conditions satisfactory to Lessor with an AM Best or similar recognized rating organization rating of "A" or better. Certificates of insurance or other evidence satisfactory to Lessor, including the original or certified copies of the actual policies showing the existence of insurance in accordance herewith, and the terms, conditions and payments therefore shall be delivered to Lessor forthwith. Certificates must include a 30-day prior written notice of cancellation clause to Lessor as well as a lender's loss payable endorsement. Lessee and any assignee of Lessor with respect to any Schedule attached to this Lease shall be named as loss payee and additional insured for purposes of such property and liability insurance. In the event Lessee fails to ensure the Equipment pursuant hereto or fails to provide evidence of insurance within 30 days after Lessee's request, Lessor may, but is not obligated to, obtain insurance in such form and amounts as Lessor deems reasonable to protect the Lessor's interest. Lessee agrees to pay Lessor a monthly insurance charge which shall include all related premiums (not reduced by any credit, adjustment or refund due or paid to Lessor), interest, fees, charges, and a profit to the Lessor and its agents for providing such coverage. Lessee agrees to arbitrate any dispute regarding such insurance charges under the rules of the American Arbitration Association in Chicago, IL. The proceeds of insurance payable as a result of loss or damage to Equipment may be applied, at the option of Lessor: (a) toward the replacement, restoration or repair of Equipment, and/or (b) toward payment of the obligations of Lessee hereunder without altering Lessee's obligations under this Lease. In the event Lessor elects to apply the insurance proceeds to Lessee's obligations for rent hereunder, Lessee's obligation for the rent shall be reduced by the amount of such insurance proceeds, however, Lessee shall be liable for any additional rents due. Such reductions of rents shall be allocated solely to the item or items lost, stolen, damaged or destroyed. Lessee irrevocably appoints Lessor as Lessor's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any insurance policy.

**11. LOSS; DAMAGE.** Lessee assumes and shall bear the risk of loss and damage to the Equipment from every cause whatsoever, whether or not insured. In the event of any loss or damage to the Equipment, Lessee at the option of Lessor shall: (a) place the same in good repair, conditions and working order; or (b) replace the same with new Equipment; or (c) pay to Lessor the following amount: the greater of (i) the total unpaid rentals for the entire term hereof, together with the present value at the rate of six (6%) percent per annum) plus Lessor's residual interest in such Equipment (herein agreed to be the greater of the fair market value of the Equipment at the expiration of the lease or twenty (20%) percent of the Equipment's original cost to Lessor) plus any amount due Lessor under Lessor's Assignee pursuant to Paragraph 20 thereof or (2) the fair market value of the Equipment immediately prior to the loss or damage. Upon payments pursuant to Subsection (c) herein, together with payment of all other sums owing on said Lease to and including such payment date, Lessor will transfer title to the affected Equipment to Lessee "as is", "where is", "with all faults", and without warranty, express or implied.

**12. GENDER; NUMBER, JOINT AND SEVERAL LIABILITY, AUTHORIZATION; ACCEPTANCE; MISCELLANEOUS.** Whenever the context of this Lease requires, the masculine gender includes the feminine or neuter and the singular number includes the plural; whenever the word "Lessor" is used herein, it shall include all assignees of Lessor; whenever the word "herein" is used referring to this Lease, it shall include the applicable Schedules hereto. If there is more than one Lessee named in this Lease, the liability of each shall be joint and several. Lessee hereby authorizes Lessor to (i) insert equipment serial numbers and other identification in the equipment description when known and (ii) correct any patent errors or omissions in this Lease (iii) insert the effective date of this Lease and the date of execution by Lessee. This Lease is submitted to Lessor for Lessor's acceptance or rejection and constitutes a continuing and irrevocable offer by Lessee to Lessor, and will not become effective and binding upon Lessor until accepted by an officer of Lessor in writing at its office in Morton Grove, Illinois. The individuals executing this Lease on behalf of Lessee personally warrant that they are doing so pursuant to due authorization and that by so executing this Lease Lessee is bound hereby. Time shall be deemed to be of the essence in the handling of all matters pursuant to this Lease. Notwithstanding any of the provisions contained herein, neither Lessor nor its assigns shall take any action which would interrupt or disturb Lessee's quiet enjoyment of the Equipment, except in accordance with provisions of this Lease.

**13. ENTIRE AGREEMENT; NON-WAIVER; NOTICES; SEVERABILITY.** This Lease and all attached Schedules, together with any Confidential Lease Proposals executed from time to time by Lessor and

08CV3822

JUDGE MANNING

MAGISTRATE JUDGE COLE

AEE

EXHIBIT

A

Lessee that have not to be documented in a Lease Schedule and funded, constitute the entire and only understanding between Lessor and Lessee relating to the subject matter hereof, and supersedes all prior promises or conditions not contained in the aforementioned documents or documents executed in connection herewith or therewith shall not be binding unless in writing and signed by duly authorized representatives of each party. No covenant or condition of this Lease can be waived except by the written consent of Lessor. Any notices required to be given hereunder shall be given in writing at the address of each party herein set forth, or to such other addresses as either party may substitute by written notice to the other. Notice shall be deemed given upon the earlier of (a) when received or (b) three days after mailing by certified or registered mail or (c) one day after being sent by reputable overnight courier. Whenever reference is made herein to the Lease it shall be deemed to include any Schedule attached hereto identifying all items of Equipment and the applicable term and rent, all of which constitute one indivisible rental of Equipment to which all the terms and provisions hereof apply. If any provision of this Lease is held invalid, such invalidity shall not affect any other provisions hereof and to this end the provisions of this Lease are declared severable.

**14. USE AND RETURN OF EQUIPMENT.** The Lessee shall exercise due and proper care in the use, repair, and servicing of the Equipment, and at all times and at its own expense shall keep and maintain the leased property in good working condition, order, and repair. In the event Lessee returns the Equipment in a damaged condition, Lessee shall continue to pay rent until such time as Lessee has placed the Equipment in good and workmanlike condition. Lessor shall have no obligation to repair the Equipment independent of Lessee's obligation to do so. The Lessee shall make no alteration except to enhance/improve the leased property without the written consent of the Lessor. Upon the expiration or termination of this Lease, from any cause, Lessee at its sole expense shall forthwith properly pack and return the Equipment to Lessor, or to such place designated by Lessor within the continental United States, immediately upon the termination or expiration of this Lease, in the same condition as when received by Lessee, reasonable wear and tear alone excepted. If Lessor does not automatically renew the lease pursuant to Paragraph 15 and if after the expiration of ten (10) business days Lessee has not returned the Equipment to Lessor, Lessee shall pay an liquidated damages an amount equal to twice the monthly or other period payment which is due immediately prior to the termination or expiration of the Lease for each month or period, or portion thereof, that Lessee possesses the Equipment until such time as the Equipment has been delivered to and accepted by Lessor. Lessee agrees to pay Lessor a re-stocking fee of five percent (5%) of the original Equipment cost and to provide Lessor with a sworn certificate with respect to the de-installation of the Equipment describing the de-installed Equipment according to quantity, description and serial number and shall certify that you have performed all of your obligations as provided herein; and, Lessee further agrees to pay to Lessor such other actual and administrative fees as Lessor may assess for preparation, modifications and termination of the Lease and performing an equipment inspection (if necessary); these obligations shall survive the termination of this Lease. All replacement parts, additions, and accessories incorporated in or affixed to the Equipment after the commencement of this Lease shall become the property of Lessor, and shall be deemed to be included as part of the Equipment described in any Schedule.

**15. RENEWAL.** AT LEAST ONE HUNDRED EIGHTY DAYS, BUT NOT GREATER THAN TWO HUNDRED TEN DAYS, PRIOR TO THE EXPIRATION OF ANY SCHEDULE, LESSEE SHALL NOTIFY LESSOR IN WRITING OF LESSEE'S INTENTION TO TERMINATE SUCH SCHEDULE ("TERMINATION NOTICE"), OR TO PURCHASE THE EQUIPMENT PURSUANT TO ANY END OF TERM OPTION SO GRANTED, IF ANY ("PURCHASE NOTICE"). IF LESSEE FAILS TO NOTIFY LESSOR PURSUANT TO THIS SECTION OR FAILS TO CONSUMMATE ANY END OF TERM OPTION FOR ANY REASON, SUCH TERMINATION OPTION OR END OF TERM OPTION SHALL BE DEEMED NOT TO HAVE BEEN EXERCISED AND THE TERMS OF SUCH SCHEDULE MAY BY LESSOR'S SOLE DISCRETION BE EXTENDED UPON ALL OF THE TERMS AND CONDITIONS AS STATED THEREIN FOR A PERIOD OF ONE YEAR (RENEWAL TERM) FROM ITS EXPIRATION DATE WITHOUT THE REQUIREMENT OR EXECUTION OF ANY FURTHER INSTRUMENT OR DOCUMENT, AND SAID SCHEDULE MAY, IN LESSOR'S SOLE DISCRETION, BE EXTENDED FROM YEAR TO YEAR THEREAFTER UNDER THE SAME TERMS AND CONDITIONS UNTIL TERMINATED.

**16. DEFAULT.** Any of the following events or conditions with respect to any Schedule related to this Lease shall constitute an event of default hereunder: (a) Lessee's failure to pay when due any rent or other amount due hereunder; (b) Lessee's or any guarantor's default in performing any other term, covenant or condition hereof or under any other agreement between Lessor and Lessee or any guarantor if such default is not cured within five (5) days after receipt of written notice thereof except as provided in (c) or (d) of this Paragraph 16; (c) seizure of any Equipment under legal process; (d) Lessee's failure to comply with its obligations under Paragraph 10 or Paragraph 18; (e) the filing by or against Lessee or any guarantor of a petition for reorganization of liquidation under the Bankruptcy Code or any amendment thereto or under any other insolvency law providing for the relief of debtors; (f) the voluntary or involuntary making of an assignment of a substantial portion of its assets by Lessee or any guarantor for the benefit of creditors, appointment of a receiver or trustee for Lessee or any guarantor or for any of Lessee's or any guarantor's assets, institution by or against Lessee or any guarantor of any formal or informal proceeding for the dissolution, liquidation, settlement of claims against or winding up of the affairs of Lessee or any guarantor, or the making by Lessee or any guarantor of a transfer of all or a material portion of Lessee's or any guarantor's assets or inventory not in the ordinary course of business; (g) the conditions of Lessee's, or guarantor's affairs shall so change as to, in Lessor's opinion, impair the safety of any Equipment or increase Lessor's credit risk; (h) any representation or warranty of Lessee or any guarantors in this Lease Agreement or in any document executed by Lessee or any guarantor in connection herewith shall prove to be untrue in any material respect when made; (i) Lessee shall merge, consolidate with or into another entity or convey, transfer, lease or otherwise dispose of (in one or a series of transactions) all or substantially all its assets (whether now owned or hereafter acquired) or the existing shareholders of Lessee on the date hereof shall at any time cease to own at least 51% of the voting stock of the Lessee on a fully diluted basis; (j) any guaranty shall be repudiated or cease to be enforceable in accordance with its terms.

**17. REMEDIES.** Upon default as to this Lease or as to any Schedule, Lessor shall have the right to exercise any one or more of the following remedies as Lessor in its sole discretion shall elect: (a) upon written notice to Lessee terminate or cancel this Lease and Lessee's rights hereunder; (b) declare all rents due and to become due hereunder immediately due and payable; (c) without terminating the Lease, require Lessee to promptly deliver the Equipment in the manner specified in Paragraph 14 hereof; (d) without terminating the Lease, to directly or by its agent, and without notice or liability or legal process enter upon any premises where any Equipment may be located, take possession of such Equipment, and either store it on said premises without charge or remove same, all without liability to Lessor or its agents for such entry, or for damage to property or otherwise (LESSEE HEREBY VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY WAIVES ITS RIGHTS TO NOTICE, LEGAL PROCESS, PRIOR JUDICIAL HEARING AND DAMAGE FOR TRESPASS); (e) without terminating the Lease, terminate any Purchase Option and sell any or all of the Equipment at public or private sale, with or without notice to Lessee or advertisement, or otherwise dispose of, hold, use, operate, lease to others or keep idle such Equipment all free and clear of any rights of Lessee and without any duty to account to Lessee for such action. Lessor shall apply the net proceeds of such sale or release of the Equipment to Lessee's obligations thereunder corresponding to the date of default, after deducting from such proceeds all costs and expenses of repossession and disposition, and reasonable attorneys' fees; (f) exercise any other rights or remedy which may be available to it in law or in equity; and (g) rescind any purchase option previously granted to Lessee. Lessee shall promptly pay any resulting deficiency; together with interest at the highest rate provided by law (and if there is no legal limit, then one and one-half (1.5%) percent per month), and Lessor's reasonable attorneys' fees if legal action or services are required to collect such deficiency. If Lessor is unable to repossess the Equipment for any reason, the Equipment shall be deemed a total loss and Lessee shall pay to Lessor the amount due pursuant to Paragraph 11(c). No termination, repossession or other act by Lessor after default shall relieve Lessee from any of its obligations hereunder unless Lessor releases Lessee in writing. In addition to all other charges hereunder, Lessee shall pay to Lessor on demand all fees, costs and expenses incurred by Lessor as a result of each default, including without limitation, reasonable attorneys', appraisers', and brokers' fees and expenses and costs of removal, storage, transportation, insurance and disposition of the Equipment (except to the extent deducted as aforesaid) and of enforcement of any of Lessor's rights pursuant to any of the instruments given as security hereunder as set forth in any Schedule. In the event that any court of competent jurisdiction determines that any provision of this Paragraph 17 is invalid or unenforceable in whole or in part such determination shall not prohibit Lessor from establishing its damages sustained as a result of any breach of this Lease in any action or proceeding in which Lessor seeks to recover such damages. TO THE EXTENT PERMITTED BY LAW, LESSEE HEREBY WAIVES TRIAL BY JURY AND ANY RIGHT OF SET-OFF OR COUNTERCLAIM IN ANY ACTION BETWEEN LESSOR AND LESSEE. The remedies provided herein in favor of Lessor shall not be exclusive, but shall be cumulative and in addition to all other remedies at law or in equity, any one or more of which may be exercised simultaneously or successively. The remedies contained herein expressly include, without limitation, the right of Lessor to recover payment of Lessee's obligations hereunder as of the date of default.

**18. LATE CHARGES COLLECTION FEES AND ATTORNEY'S FEES.** If any part of any sum owed to Lessor is not received by Lessor when due, then Lessee agrees to pay Lessor (a) a late charge of 15% of the delinquent Lease Rental Payment; (b) an interest charge of 1.5% of the amount outstanding per month for every month after the first month which the sum remains unpaid; (c) a returned check for non-sufficient funds charge of $50 or actual bank charges whichever are greater; (d) a collection call charge to make up for the time and expense in making any collection call, such collection call charge is stipulated and

liquidated to be $20.00 per call. No interest charged under the Lease or any Schedule shall exceed the maximum permitted by law. Lessee agrees to pay Lessor a reasonable attorneys' fees as damages and costs in all proceedings instituted by Lessor to interpret and enforce the terms of this Lease.

**19. INDEMNITY.** Lessee does hereby assume liability for and does agree to indemnify, protect, save and keep harmless Lessor and Lessee's Assignee from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements, including court costs and legal expenses, of any kind and nature, imposed on, incurred by or asserted against Lessor (whether or not also indemnified against by any other person) in any way relating to or arising out of this Lease or the manufacture, purchase, ownership, delivery, rental, possession, use, operation, condition, return or other disposition of the Equipment by Lessor or Lessee, including without limitation, any claim alleging latent or other defects, whether or not discoverable by Lessor or Lessee, any claim for patent, trademark or copyright infringement; any claim arising out of strict liability in tort; and any taxes for which Lessee is responsible pursuant to this Lease.

**20. ASSIGNMENT.** WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, LESSEE SHALL NOT ASSIGN, TRANSFER, PLEDGE OR HYPOTHECATE THIS LEASE, ANY EQUIPMENT OR ANY INTEREST IN THIS LEASE; OR IN AND TO THE EQUIPMENT OR PERMIT ITS RIGHTS UNDER THIS LEASE TO BE SUBJECT TO ANY LIEN, CHARGE OR ENCUMBRANCE OF ANY NATURE. LESSEE'S INTEREST HEREIN IS NOT ASSIGNABLE AND SHALL NOT BE ASSIGNED OR TRANSFERRED BY OPERATION OF LAW. Lessor shall have the right to assign this Lease, its interest in any Equipment or any part thereof or any interest therein or proceeds due it pursuant to an end of term option or agreement, if any. Lessee agrees to execute such instruments and documents and take such other actions as Lessor may require to carry out the purpose and intent of this Section 20. If Lessor assigns the rents reserved herein or all or any of the Lessor's other rights or interests hereunder, or amounts equal thereto, the right of the assignee to receive the rentals as well as any other rights of the assignee shall not be subject to any defense, set-off, counterclaim or recoupment which may arise out of any breach or obligation of Lessor or by reason of any other indebtedness or liability at any time owing by Lessor to Lessee. All rentals due hereunder shall be payable to assignee by Lessee whether or not this Lease is terminated by operation of law or otherwise including without limitation, termination arising out of bankruptcy, reorganization or similar proceedings involving Lessor. Upon receipt of notification of such assignment, Lessee, subject to its rights hereunder, shall become the pledgeholder of the Equipment for and on behalf of the assignee and will relinquish possession thereof only to the assignee or pursuant to its written order. Lessee, on receiving notice of any such assignment, shall abide thereby and make payments as may therein be directed. Following such assignments, the term "Lessor" shall be deemed to include or refer to Lessor's assignee, provided that no such assignee shall be deemed to assume any obligation or duty imposed upon Lessor hereunder and Lessee shall look only to Lessor for performance thereof. All rights and remedies of Lessor hereunder shall accrue to and be enforceable by any assignee of Lessor in its own name. Lessee acknowledges and confirms that in the event of an assignment, said assignment will not materially increase Lessee's risks or burdens pursuant to UCC9-302(5).

**21. DEPRECIATION INDEMNITY.** (PARAGRAPH 21 DOES NOT APPLY IF LESSOR HAS AGREED IN WRITING TO PASS THE DEPRECIATION DEDUCTIONS TO LESSEE). If, as to any Equipment, under any circumstances and for any reason whatsoever, and through the fault of the Lessor, Lessor or Lessor's transferee (in the event Lessor transfers its right, to claim depreciation) shall lose or shall not have the right to claim, or there shall be disallowed or recaptured (collectively a "Loss") any portion of the claimed depreciation deductions for such Equipment, based on the cost thereof, Lessee agrees to pay Lessor upon demand an amount which, in the reasonable opinion of the Lessor, will cause Lessor or Lessor's transferee, after tax net yield in respect of such equipment to equal the net yield that Lessor or its transferee would have received, if Lessor or its transferee had not suffered such loss.

**22. LESSOR'S RIGHT TO TERMINATE.** Without limiting the rights of Lessor to terminate any Schedule in the event of a default by Lessee, Lessor, at its sole election, shall at any time prior to acceptance of any Equipment have the right to terminate this Lease with respect to such Equipment if (a) there shall occur a material adverse change in Lessee's or any Guarantor's financial position or credit standing, or (b) any condition of Lessor's obligation to lease such Equipment set forth herein or in any other agreement between Lessor and Lessee shall not be fulfilled within the time specified, or (c) if at any time prior to delivery of the Equipment more than 60 days shall elapse between the date of execution of the Lease or Schedule describing such Equipment and the date of delivery of the Equipment to Lessee and if during such period there shall be a general increase in the prevailing cost of borrowed money, provided, however, that Lessor shall not so have the right to terminate this Lease with respect to such Equipment if Lessee shall then agree to amend this Lease and any other documents securing this Lease to provide for any increase in rental satisfactory to Lessor which takes into account in rental or rate factor said increase in the prevailing cost of borrowed money. Upon any termination by Lessor pursuant to this Paragraph, Lessee shall forthwith reimburse Lessor for sums paid by Lessor with respect to such Equipment and pay Lessor all other sums then due hereunder; whereupon if Lessee is not then in default and shall have then fully performed all of its obligations hereunder, Lessor will, upon request of Lessee transfer to Lessee without warranty or recourse any rights that Lessor may then have with respect to such Equipment.

**23. LESSEE'S WARRANTIES.** Lessee warrants to Lessor that (a) if Lessee is a corporation or partnership, Lessee is and shall at all times hereafter be duly organized and existing in good standing under the laws of the State of its incorporation or organization and has duly authorized the execution and performance of this Lease; (b) this Lease has been duly and validly executed and delivered by Lessee and constitutes and will constitute the valid and binding obligation of Lessee, enforceable in accordance with its terms; (c) the execution and performance of this Lease by Lessee will not violate any law or other governmental requirement or, if Lessee is a corporation, Lessee's corporate charter or by-laws; nor will it constitute a default under any agreement to which Lessee is now or hereafter a party; (d) all financial statements and information which have been or may hereafter be submitted to Lessor relating to Lessee or any Guarantor have been and will be prepared in accordance with generally accepted accounting principles; (e) there has been no material adverse change in the financial condition of Lessee or the Guarantor since the last submission of such financial information to Lessor; and (f) the Equipment is being leased by Lessee solely for business or commercial purposes. Lessee agrees to deliver to Lessor at any time or times hereafter such documents including, without limitation, and certified resolutions, as Lessor may reasonably request to demonstrate Lessee's compliance with the foregoing. Each of the above warranties shall be continuing and shall be deemed remade concurrently with the execution by Lessee of each Schedule, if any.

**24. SURVIVAL.** Lessee's indemnities (including, without limitation, under paragraphs 19 and 21 hereof), representations, and warranties shall survive the expiration or other termination of this Lease.

**25. CHOICE OF LAW.** This Lease, except for local filing requirements, shall be governed by Illinois law and shall be deemed to have been made in Morton Grove, Illinois. Lessee does hereby submit to the jurisdiction of any courts (Federal, State or local) which have situs within the State of Illinois with respect to any dispute, claim or suit arising out of or relating to this Lease or Lessee's obligations hereunder. In the event this Lease or any portion thereof is assigned by Lessor, at the option of such assignee, this Lease shall be governed by the laws of the state where assignee maintains its principal place of business.

**26. ARTICLE 2A.** Lessor and Lessee agree that if Article 2A – Lease of the Uniform Commercial Code ("Code") governs the terms of this Lease, then this Lease will be deemed a "finance lease". By executing this Lease, Lessee acknowledges that (a) Lessor has selected Lessee of (i) the identity of the Supplier of the Equipment, (ii) that Lessee may have rights under the "supply contract" as defined in the Code, pursuant to which Lessor is purchasing the Equipment, and (iii) that Lessee may contact the Supplier for a description of any such rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY THE CODE, INCLUDING SECTIONS 2A-508 THROUGH 522 THEREOF. To the extent that any provisions of this Lease are inconsistent with the provisions of Article 2A of the Uniform Commercial Code the parties agree that, to the extent permitted by such Article 2A, the terms of this Lease shall control.

**27. DEFINITIONS.** For purposes of this Lease:
a) LEASE COMMENCEMENT DATE means the date Lessee accepts the Equipment as evidenced by Lessee executing a Certificate of Acceptance;
b) LESSOR'S CAPITALIZED COST means the sum of the purchase price of the Equipment, sales and/or use tax, if applicable, installation costs, delivery costs, and the buy-out of a prior lease if applicable.
c) MONTHLY LEASE FACTOR means the monthly Lease Rental Payment divided by the Lessor's Capitalized Cost.

The parties intend and agree that a carbon copy, photocopy or facsimile of this Lease with their signature thereon and all counterparts when taken together, shall be treated as an original, and shall be deemed to be as binding, valid, genuine, and authentic as an original-signature document for all purposes, including all matters of evidence and the "best evidence" rules.

THIS LEASE IS SUBJECT TO THE TERMS AND CONDITIONS PRINTED ABOVE WHICH ARE MADE A PART HEREOF AND WHICH LESSEE ACKNOWLEDGES IT HAS READ AND FULLY UNDERSTANDS.
IN WITNESS WHEREOF

**Signature Page**
**to Master Lease Agreement No. 801075 dated as of May 18, 2006**
**by and between IFC Credit Corporation, as Lessor, and**
**Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc.,**
**(together as the "Lessee")**

Lessees have executed this Lease as of this 18ᵗʰ day of May, 2006.

The party below executes this lease as Lessee hereunder:

LESSEE:     Johnson Broadcasting of Dallas, Inc., a Texas Corporation

Authorized Signature X:

Name:    Douglas Johnson     Title:     President

LESSEE:     Johnson Broadcasting, Inc, a Michigan Corporation

Authorized Signature X:

Name:    Douglas Johnson     Title:     President


Accepted at Morton Grove, Illinois the 18ᵗʰ day of May, 2006.

LESSOR:     IFC CREDIT CORPORATION

Authorized Signature X:          Name:                    Title:

Stephen S. Csar
Vice President

Counterpart No. 1

LEASE SCHEDULE NO. 001
to Master Lease Agreement No. 801075 dated May 18, 2006 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")

**EQUIPMENT:**

| Quantity | Description (Make, Model, and Serial No.) | |
|---|---|---|
| 1 | Axcera | HU3700AD 3.7 kw DTV Transmitter |
| | | |

**EQUIPMENT LOCATION:**  Johnson Broadcasting of Dallas, Inc.
2133 Bar Road
Cedar Hill, TX 75104

**LESSOR'S CAPITALIZED COST:**  $404,211.85

*"Lessor's Capitalized Cost" shall mean the sum of the purchase price of the Equipment, sales and/or use tax if applicable, installation costs, delivery costs, and buy-out of a previous lease if applicable.*

**LEASE COMMENCEMENT DATE:**  The term of this Lease Schedule shall begin on the date Lessee executes a Certificate of Acceptance (the "Lease Commencement Date") and shall continue for a period of sixty (60) months beginning on _____ (the "Initial Term Start Date").

**INITIAL TERM:**  60 months

**LEASE RENTAL PAYMENT:**  Lessee shall pay as monthly rental during the Initial Term $8,590.00, which amount shall be due and payable in advance on the first day of each month during the Initial Term. Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice.

**ADVANCE PAYMENT:**  Lessee shall pay $17,180.00, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the first and last Lease Rental Payment(s).

**EQUIPMENT DISCLAIMER AND AGREEMENT:**  Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us. We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, ITS **MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE.  NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.**

_____ Initials

1

**EXHIBIT**

tabbies

B

Counterpart No. 1

LESSEE'S ACKNOWLEDGEMENT:    Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows:

(a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or otherwise, so assigned shall be absolutely unconditional and shall be payable whether or not the Lease are terminated by operation of law, any act of the parties, or otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon. All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 18th day of May, 2006.

LESSOR:
IFC CREDIT CORPORATION

_____
Authorized Signer

Stephen S. Csar
Vice President

LESSEE:
JOHNSON BROADCASTING OF DALLAS, INC.

_____
Authorized Signature

Douglas Johnson
Name

President
Title

LESSEE:
JOHNSON BROADCASTING, INC.

_____
Authorized Signature

Douglas Johnson
Name

President

Counterpart No. 1 of this Lease Schedule is the only Original. All other counterparts are duplicate originals. A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1. Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

2

Version 3.0- 6/04
Equipment Schedule

## CERTIFICATE OF ACCEPTANCE

**RE:** Lease Schedule No.  001
under Master Lease Agreement No.801075 dated May 18, 2006 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")

**LESSEE HEREBY CERTIFIES** that all items of equipment described in the Lease have been received by the Lessee as of this _____ day of _____, 2006 and are in good order and condition and are acceptable to the Lessee where is, as is.  The decals, labels, *et cetera*, if required by the Lessor and supplied to the Lessee, have been affixed to said items.

Lessee hereby acknowledges that Lessor did not select, manufacture or supply the equipment and Lessor acquired the equipment in connection with the Lease and the Lease Schedule.

Lessee hereby approves payment by the Lessor to the supplier.  Lessee hereby certifies that the Lessor has fully and satisfactorily performed all covenants and conditions to be performed by it under the Lease.

**LESSEE HEREBY ACKNOWLEDGES THAT IT UNDERSTANDS THAT THE LESSOR IS RELYING UPON THIS CERTIFICATE OF ACCEPTANCE IN MAKING PAYMENT TO THE SUPPLIER.**

**LESSEE:  Johnson Broadcasting of Dallas, Inc.**

_____
Authorized Signature

Douglas Johnson_____
Name

President_____
Title

**LESSEE:  Johnson Broadcasting, Inc.**

_____
Authorized Signature

Douglas Johnson_____
Name

President_____
Title

**EXHIBIT**

tabbies*

C



**CREDIT CORPORATION**

John R. Zinke Jr.
Attorney, Vice President - Legal Affairs

May 22, 2008

<u>**VIA FEDERAL EXPRESS & FAX to (713) 266-5196**</u>
Johnson Broadcasting of Dallas, Inc. and
Johnson Broadcasting, Inc., as Co-Lessees
Attn: Mr. Douglas Johnson
8440 Westpark Drive
Houston, TX  77063-5808

Re:　　**\*NOTICE & DEMAND FOR PAST DUE PAYMENTS OF $44,296.26\***
　　　　**Master Lease Agreement No. 801075, dated May 18, 2006,**
　　　　**and Lease Schedules 001, 002, & 003 (the "Lease")**
　　　　**between IFC Credit Corporation, as Lessor, and Johnson Broadcasting, Inc.,**
　　　　**and Johnson Broadcasting of Dallas, Inc., as Co-Lessees**

Dear Mr. Johnson:

This is to advise you that as of today Johnson Broadcasting, Inc., and Johnson Broadcasting of Dallas, Inc., as Co-Lessees, are presently past due in the amount of $44,296.26 representing lease payments ($24,771.08) and late charges ($3,715.66) for May, 2008, on Lease Nos. 801075-001, -002, and -003 and past due property taxes on Lease Nos. 801075-001 ($7,014.89) and 801075-003 ($8,794.63).

As you are aware, you (Douglas Johnson) and Melanie Johnson have both personally guaranteed all payments and other charges under the Lease.

This letter will serve as demand for full payment of the past-due amounts under the Lease, currently <u>$44,296.26</u>.  Please make your check payable to <u>IFC Credit Corporation,</u> be sure to put <u>Lease No. 801075-001, 002, & 003</u> on the face of the check, <u>and direct the check to my attention at the address below</u> so that the check is actually received at this office by or before <u>**May 29, 2008**</u>.

Please be further advised that if said payment of the past-due amount of <u>**$44,296.26**</u> is not received by or on <u>**May 29, 2008**</u>, you will leave us with no choice but to proceed without further notice, to take appropriate legal action here in Cook County, Illinois, against Johnson Broadcasting, Inc., and Johnson Broadcasting of Dallas, Inc., as Co-Lessees, and you (Douglas Johnson) and Melanie Johnson, individually, as personal guarantors for full payment of the total amount due under the Lease including attorneys fees and court costs thereby creating a public record of legal action.

MEMBER



Equipment
Leasing
Association
of America

8700 Waukegan Road, Suite 100, Morton Grove, Illinois 60053 • (847) 663-6700

**EXHIBIT**

D



Johnson Broadcasting of Dallas, Inc. and
Johnson Broadcasting, Inc., as Co-Lessees
Attn: Mr. Douglas Johnson
May 22, 2008
Page Two


Please also note that once the lawsuit has been filed, you will be required to respond directly to our attorneys and the court, which may require that you hire an attorney to represent you and/or your company.

**In addition, this is to remind you that your payment of rent for June in the amount of $24,771.08 on Lease Nos. 801075-001,-002, and -003 is due to be received at this office on or before June 1, 2008.**

Time is of the essence. Please give this matter your immediate attention.

Sincerely,

IFC CREDIT CORPORATION, Legal Department

By:  JOHN R. ZINKE JR.
     Attorney, Vice-President of Legal Affairs


cc via e-mail to:  Douglas Johnson at doug@knws51.com
                   & Melanie Johnson at melecj@yahoo.com

cc via U.S. Mail to:
        -Douglas R. Johnson, Registered Agent of Johnson Broadcasting, Inc.,
        15600 Barkers Landing Rd., Apt. 14, Houston, TX 77079
        -Douglas R. Johnson and Melanie Johnson, (Personal Guarantors)
        11682 Arrowwood Circle, Houston, TX 77063

Counterpart No. 1

LEASE SCHEDULE NO. 002
to Master Lease Agreement No. 801075 dated May 18, 2006 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")

EQUIPMENT:

| Quantity | Description (Make, Model, and Serial No.) |
|----------|-------------------------------------------|
| 1 | Synergy - Electrical Engineering - 3 phase supply, Installation etc. - $152,396.00 |
| 1 | Synergy - Power Conditioning / 100 KVA - $85,000.00 |

EQUIPMENT LOCATION:        Johnson Broadcasting of Dallas, Inc.
                           2133 Bar Road
                           Cedar Hill, TX 75104

LESSOR'S CAPITALIZED COST:        $237,396.00

*"Lessor's Capitalized Cost" shall mean the sum of the purchase price of the Equipment, sales and/or use tax if applicable, installation costs, delivery costs, and buy-out of a previous lease if applicable.*

LEASE COMMENCEMENT DATE:        The term of this Lease Schedule shall begin on the date Lessee executes a Certificate of Acceptance (the "Lease Commencement Date") and shall continue for a period of sixty (60) months beginning on _____ (the "Initial Term Start Date").

INITIAL TERM:        60 months

LEASE RENTAL PAYMENT:        Lessee shall pay as monthly rental during the Initial Term $5,045.00, which amount shall be due and payable in advance on the first day of each month during the Initial Term. Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice.

ADVANCE PAYMENT:        Lessee shall pay $10,090.00, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the first and last Lease Rental Payment(s).

EQUIPMENT DISCLAIMER AND
AGREEMENT:        Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us. We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, **ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL**

_____ Initials                    1                    Version 3.0 – 6/04
                                                          Equipment Schedule

EXHIBIT

*E*

**RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.**

LESSEE'S ACKNOWLEDGEMENT:   Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows:

(a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or otherwise, so assigned shall be absolutely unconditional and shall be payable whether or not the Lease are terminated by operation of law, any act of the parties, or otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon. All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 18th day of May, 2006.

LESSOR:                              LESSEE:
IFC CREDIT CORPORATION               JOHNSON BROADCASTING OF DALLAS, INC.

_Susan M. Herndon_                   _____
Authorized Signer                    Authorized Signature

Susan M. Herndon                     Douglas Johnson
Director of Contract Admin.          Name

                                     President
                                     Title


                                     LESSEE:
                                     JOHNSON BROADCASTING, INC.

                                     _____
                                     Authorized Signature

                                     Douglas Johnson
                                     Name

                                     President

Counterpart No. 1 of this Lease Schedule is the only Original. All other counterparts are duplicate originals. A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1. Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

2

Version 3.0- 6/04
Equipment Schedule

## CERTIFICATE OF ACCEPTANCE

**RE:** Lease Schedule No. 002
under Master Lease Agreement No. 801075 dated May 18, 2006 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")


**LESSEE HEREBY CERTIFIES** that all items of equipment described in the Lease have been received by the Lessee as of this _____ day of _____, 2006 and are in good order and condition and are acceptable to the Lessee where is, as is. The decals, labels, *et cetera*, if required by the Lessor and supplied to the Lessee, have been affixed to said items.

Lessee hereby acknowledges that Lessor did not select, manufacture or supply the equipment and Lessor acquired the equipment in connection with the Lease and the Lease Schedule.

Lessee hereby approves payment by the Lessor to the supplier. Lessee hereby certifies that the Lessor has fully and satisfactorily performed all covenants and conditions to be performed by it under the Lease.


**LESSEE HEREBY ACKNOWLEDGES THAT IT UNDERSTANDS THAT THE LESSOR IS RELYING UPON THIS CERTIFICATE OF ACCEPTANCE IN MAKING PAYMENT TO THE SUPPLIER.**

**LESSEE: Johnson Broadcasting of Dallas, Inc.**

_____
Authorized Signature

Douglas Johnson_____
Name

President_____
Title

**LESSEE: Johnson Broadcasting, Inc.**

_____
Authorized Signature

Douglas Johnson_____
Name

President_____
Title

**EXHIBIT**

F

Counterpart No. 1

LEASE SCHEDULE NO. 003
to Master Lease Agreement No. 801075 dated May 18, 2006 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")

EQUIPMENT:

| Quantity | Description (Make, Model, and Serial No.) |
|---|---|
|  |  |
|  |  |
|  |  |

**EQUIPMENT LOCATION:**

Johnson Broadcasting of Dallas, Inc.
2133 Bar Road
Cedar Hill, TX 75104

**LESSOR'S CAPITALIZED COST:**

$510,560.95

*"Lessor's Capitalized Cost" shall mean the sum of the purchase price of the Equipment, sales and/or use tax if applicable, installation costs, delivery costs, and buy-out of a previous lease if applicable.*

**LEASE COMMENCEMENT DATE:**

The term of this Lease Schedule shall begin on the date Lessee executes a Certificate of Acceptance (the "Lease Commencement Date") and shall continue for a period of sixty (60) months beginning on _____ (the "Initial Term Start Date").

**INITIAL TERM:**

60 months

**LEASE RENTAL PAYMENT:**

Lessee shall pay as monthly rental during the Initial Term $10,850.00, which amount shall be due and payable in advance on the first day of each month during the Initial Term. Rental per day for the period from the Lease Commencement Date to the Initial Term Start Date shall be equal to 1/30th of the monthly Lease Rental Payment and shall be due upon receipt of invoice.

**ADVANCE PAYMENT:**

Lessee shall pay $21,700.00, which amount shall be due and payable upon execution of this Lease Schedule, to be applied to the first and last Lease Rental Payment(s).

**EQUIPMENT DISCLAIMER AND AGREEMENT:**

Lessee hereby acknowledges that we are aware of our obligations with reference to the Lease, and that we agree to enforce in our own name all warranties, agreements, or representations, if any, which may be made by the supplier to us. We agree that IFC Credit Corporation makes no expressed or implied warranties as to any matter whatsoever, including without limitation the condition of the equipment, **ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. NO DEFECT OR UNFITNESS OF EQUIPMENT SHALL RELEASE US OF THE OBLIGATION TO PAY RENTAL PAYMENTS OR OF ANY OTHER OBLIGATIONS UNDER THE LEASE.**

_____ Initials

1

Version 3.0 – 6/04
Equipment Schedule

EXHIBIT

G
_____

Counterpart No. 1

**LESSEE'S ACKNOWLEDGEMENT:** Lessee hereby acknowledges the Lessor's right to assign its interest under the Lease and that Lessor's Assignee does not assume any of the obligations of the Lessor thereunder, consents to any such assignment, and, in consideration of Lessor's Assignee having advanced funds to the Lessor to finance the items of equipment described in the Lease, agrees as follows:

(a) that its obligation to pay directly to the Assignee the amounts which are or become due from the Lessee as set forth in the Lease, whether designated as rentals or otherwise, so assigned shall be absolutely unconditional and shall be payable whether or not the Lease are terminated by operation of law, any act of the parties, or otherwise, and it promises so to pay the same notwithstanding any defense, set-off, or counterclaim whatsoever, whether by reason of breach of the Lease, the exercise of any right or option thereunder, or otherwise, which it may or might now or hereafter have against the Lessor and (b) that, subject to and without impairment of the Lessee's leasehold rights in and to the items of equipment described in the Lease, Lessee holds said Equipment and the possession thereof for the Assignee to the extent of the Assignee's rights therein.

This Lease Schedule is issued pursuant to the Master Lease identified hereon. All the terms, conditions, representations, and warranties of the Master Lease are hereby incorporated herein and made a part hereof as if they were expressly set forth in this Lease Schedule, and this Lease Schedule constitutes a separate lease with respect to the Equipment described herein.

IN WITNESS WHEREOF, the parties below have caused this Lease Schedule to be executed by their duly authorized representatives as of this 18th day of May, 2006.

LESSOR:
**IFC CREDIT CORPORATION**

Authorized Signer

Susan M. Herndon
Director of Contract Admin.

LESSEE:
**JOHNSON BROADCASTING OF DALLAS, INC.**

Authorized Signature

Douglas Johnson
Name

President
Title

LESSEE:
**JOHNSON BROADCASTING, INC.**

Authorized Signature

Douglas Johnson
Name

President

Counterpart No. 1 of this Lease Schedule is the only Original. All other counterparts are duplicate originals. A security interest in this Lease Schedule may be created and/or perfected only by possession of Counterpart No. 1. Possession of any other counterpart will not give rise to the creation or perfection of a security interest.

2

Version 3.0- 6/04
Equipment Schedule

Exhibit A to Lease Schedule No. 003
to Master Lease Agreement No. 801075 dated May 18, 2006  (the "Lease")
between IFC Credit Corporation ("Lessor") and
Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")

| Description (Make, Model, and Serial No.) | | |
|---|---|---|
| Synergy | Power Generation Package / 200 kw Generator w/Installation | $ 90,000.00 |
| Synergy | Internal Structural Buildout | $ 55,500.00 |
| Synergy | Wall Coring | $ 2,500.00 |
| Synergy | Fire Supression System | $ 95,000.00 |
| Synergy | HVAC System / Engineering / Documentation / Install | $ 47,000.00 |
| Synergy | Steel Grated Mezzanine - 23 X 20 Self Supporting | $ 26,750.00 |
| Synergy | Engineering, Design and Supervision, Site Planning | $ 10,000.00 |
| Synergy | Synergy Broadcast Group, Inc, Project Fee | $ 42,310.95 |
| Synergy | DTV Transmitter Installation | $ 34,000.00 |
| Synergy | Rack Equipment Installation | $ 15,000.00 |
| Synergy | Video Processing Equipment | $ 10,000.00 |
| Synergy | Audio Processing Equipment | $ 10,000.00 |
| Synergy | Move & reinstall Transmitter to Cedar Hills | $ 8,000.00 |
| Synergy | Move & reinstall KLDT analogue master control to Cedar Hills | $ 12,000.00 |
| Synergy | Satelite Equipment | $ 23,500.00 |
| Synergy | Installation of 3.8 m Comtech | $ 14,000.00 |
| Synergy | Relocation of 3.0 meter dish from Louisville | $ 15,000.00 |

EQUIPMENT LOCATION:    Johnson Broadcasting of Dallas, Inc.
2133 Bar Road
Cedar Hill, TX 75104

LESSOR:
IFC CREDIT CORPORATION

_Authorized Signature_
Authorized Signature

Susan M. Herndon
Director of Contract Admin.

LESSEE:
Johnson Broadcasting of Dallas, Inc.

_Authorized Signature_
Authorized Signature

Douglas Johnson
Name

President
Title

LESSEE:
Johnson Broadcasting, Inc.

_Authorized Signature_
Authorized Signature

Douglas Johnson
Name

President
Title

1

## CERTIFICATE OF ACCEPTANCE

**RE: Lease Schedule No. 003**
under Master Lease Agreement No.801075 dated May 18, 2006 (the "Lease")
between IFC Credit Corporation ("Lessor")
and Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")

**LESSEE HEREBY CERTIFIES** that all items of equipment described in the Lease have been received by the Lessee as of this _____ day of _____, 2006 and are in good order and condition and are acceptable to the Lessee where is, as is. The decals, labels, *et cetera*, if required by the Lessor and supplied to the Lessee, have been affixed to said items.

Lessee hereby acknowledges that Lessor did not select, manufacture or supply the equipment and Lessor acquired the equipment in connection with the Lease and the Lease Schedule.

Lessee hereby approves payment by the Lessor to the supplier. Lessee hereby certifies that the Lessor has fully and satisfactorily performed all covenants and conditions to be performed by it under the Lease.

**LESSEE HEREBY ACKNOWLEDGES THAT IT UNDERSTANDS THAT THE LESSOR IS RELYING UPON THIS CERTIFICATE OF ACCEPTANCE IN MAKING PAYMENT TO THE SUPPLIER.**

**LESSEE: Johnson Broadcasting of Dallas, Inc.**

_____
Authorized Signature

Douglas Johnson
_____
Name

President
_____
Title

**LESSEE: Johnson Broadcasting, Inc.**

_____
Authorized Signature

Douglas Johnson
_____
Name

President
_____
Title



EXHIBIT

H

## GUARANTY

RE: Master Lease Agreement No. 801075 dated the 18th day of May, 2006
(as amended, modified or supplemented from time to time, the "Lease")
between IFC Credit Corporation ("Lessor") and
Johnson Broadcasting of Dallas, Inc. and Johnson Broadcasting, Inc. (collectively the "Lessee")

In order to induce Lessor to enter into the Lease with Lessee and for Lessor to enter into such additional lease transaction(s) with Lessee as Lessor, in its sole discretion, may now or from time to time hereinafter deem advisable, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned (hereinafter called "Guarantor", who, if two or more in number, shall be jointly and severally bound hereby) guarantees absolutely, continually, unconditionally and without limitation to Lessor, its successors and assigns, the full, prompt and unconditional payment when due whether upon the due date or earlier by reason of acceleration or otherwise, and at all times thereafter, of all the indebtedness, liabilities and obligations (including, without limitation, any and all indemnification obligations) of Lessee to Lessor, its successors and assigns, hereafter existing, due or to become due, under the Lease, or any other lease or lease schedule now or hereafter made between Lessor and Lessee (including any and all existing leases and lease schedules made between Lessor and Lessee before the date hereof) (collectively, the "Liabilities").

Guarantor expressly agrees that the validity of this Guaranty and the enforceability of the obligations of Guarantor hereunder shall in no way be terminated, affected, or impaired by reason of the granting by Lessor of any indulgence to Lessee with respect to the Liabilities or by reason of the assertion by Lessor against Lessee of any of the rights or remedies reserved to Lessor pursuant to the provisions of the Lease or any lease schedule thereunder, by operation of law or otherwise, Guarantor hereby waiving all suretyship defenses, and any circumstance whatsoever which might constitute a legal or equitable discharge or defense of Guarantor. Guarantor authorizes Lessor, from time to time, to change any of the terms, conditions, covenants or provisions of any instrument evidencing the Liabilities and/or to amend, modify, extend, change or supplement any instrument evidencing the Liabilities. Guarantor covenants and agrees that this Guaranty shall remain and continue in full force and effect as to any amendment, renewal, modification, or extension of the Liabilities.

Guarantor further agrees to pay all costs and expenses including, without limitation, court costs and attorneys' and paralegal fees and expenses, paid or incurred by Lessor in endeavoring to collect the Liabilities in whole or in part and in enforcing this Guaranty.

Guarantor further agrees that its obligations under this Guaranty shall be primary and that Lessor may at its option proceed against Guarantor and Lessee, jointly and severally, or against Guarantor, individually, without having commenced any action against or having obtained any judgements against Lessee or any other person primarily or secondarily liable on the Liabilities. Further, Guarantor waives notice of, and does hereby consent to the release or any other application of any collateral security to the Liabilities by Lessor.

The failure of Lessor to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions, or covenants of this Guaranty or the Liabilities or to exercise any right herein or therein contained shall not be construed or deemed to be a waiver or relinquishment for the future of such term, provision, covenant or right. No subletting, assignment, or other transfer of any Liability, or any interest therein, whether or not with Lessor's consent, shall operate to extinguish or diminish the liability of Guarantor under this Guaranty.

Guarantor waives notice of acceptance of this Guaranty, and further waives protest, presentment, demand for payment, demand for performance, notice of default or non-payment under the Liabilities, notice of dishonor, and any and all rights

1

EXHIBIT
I

of subrogation, reimbursement, indemnity, exoneration, contribution or any claim which Guarantor may now or hereafter have against Lessee or any other person directly or contingently liable for the Liabilities, or against or with respect to Lessee's property (including, without limitation, property collateralizing Lessee's obligations to Lessor) arising from the existence or performance of this Guaranty. Whenever possible, each provision of this Guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provisions of this Guaranty shall be invalid under such law, such provisions shall be ineffective to the extent of such prohibition or invalidity and shall not invalidate the remainder of such provision or remaining provisions of this Guaranty.

This Guaranty shall be binding upon Guarantor and upon the successors, assigns, heirs, executors and other legal representatives of Guarantor and shall inure to the benefit of Lessor's successors and assigns; all references herein to Lessee and to Guarantor shall be deemed to include their successors, assigns, heirs and other legal representatives, as applicable. Nothing in this Guaranty shall be construed to permit Guarantor to delegate its duties under this Guaranty to any other person or entity. Lessee's successors and assigns shall include, without limitation, any receiver, trustee or debtor in possession of or for Lessee. All references to the singular shall be deemed to include the plural where the context so requires.

This Guaranty has been executed, delivered and accepted at and shall be deemed to have been made at Morton Grove, Illinois, and shall be interpreted and the rights and liabilities of the parties hereto determined, in accordance with the internal laws of the State of Illinois, and Guarantor submits to the exclusive jurisdiction of any state or federal court having situs within Cook County, Illinois and waives personal service of any and all process upon Guarantor, and agrees that all such service of process shall be deemed given upon the earlier of (a) when received or (b) three days after mailing by certified or registered mail or (c) one day after being sent by reputable overnight courier to Guarantor at the address indicated below. Guarantor may change his/their address for purposes of the preceding sentence by prior written notice to Lessor at 8700 N. Waukegan Road, Suite 100, Morton Grove, IL 60053. Guarantor waives trial by jury, any objection based on forum non conveniens, and any objection to venue of any action instituted hereunder and consents to such legal or equitable relief as is deemed appropriate by the court.

Guarantor agrees that, in the event of the death, incompetency, dissolution or insolvency of Lessee or Guarantor, or the inability of Lessee or Guarantor to pay debts as they mature, or an assignment by Lessee or Guarantor for the benefit of creditors, or the institution of any proceeding by or against Lessee or Guarantor alleging that Lessee or Guarantor is insolvent or unable to pay debts as they mature, and if such event shall occur at a time when any of the Liabilities may not then be due and payable, Guarantor will pay to Lessor forthwith the full amount which would be payable hereunder by Guarantor if all of the Liabilities were then due and payable.

Guarantor further agrees that, if at any time all or any part of any payment theretofore applied by Lessor to any of the Liabilities is or must be rescinded or returned by Lessor for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of Lessee), such Liabilities shall, for the purposes of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by Lessor, and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such Liabilities, all as though such application by Lessor had not been made.


Initials

Initials

2

This Guaranty may not be modified orally, but only by a written instrument signed by both Guarantor and Lessor.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed the 18th day of May, 2006.

WITNESS:                                             GUARANTOR:

_____                     _____
Signature                                           Signature

_____                     Douglas R. Johnson_____
Name                                                Name

_____                     11682 Arrowwood Circle_____
Home Address                                        Home Address

_____                     Houston, TX 77063_____
City, State, Zip                                    City, State, Zip

_____                     713-906-3008_____
Home Phone Number                                   Home Phone Number

                                                    ███████████████
                                                    Social Security Number


WITNESS:                                             GUARANTOR:

_____                     _____
Signature                                           Signature

_____                     Melanie Johnson_____
Name                                                Name

_____                     11682 Arrowwood Circle_____
Home Address                                        Home Address

_____                     Houston, TX 77063_____
City, State, Zip                                    City, State, Zip

_____                     713-906-3008_____
Home Phone Number                                   Home Phone Number

                                                    ███████████████
                                                    Social Security Number

3